# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:09-cr-43 |
| | ) | 2:13-cv-258 |
| STANTON LANDRY CEPHUS, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Petitioner, Stanton Landry Cephus, on July 29, 2013 (DE #474); and (2) Motion for Appointment of Counsel, filed by Petitioner, Stanton Landry Cephus, on September 23, 2013 (DE #483). For the reasons set forth below, the motion to appoint counsel (DE #483) is **DENIED** and the section 2255 motion (DE #474) is also **DENIED**. Cephus's request for an evidentiary hearing is also **DENIED**. The Clerk is **ORDERED** to **DISMISS** this civil action **WITH PREJUDICE**. Additionally, the Court **DECLINES** to issue a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Inmate Reg. No. 10107-27), Otisville FCI, Inmate Mail/Parcels, P.O. Box 1000, Otisville, NY 10963, or to such other more current address that may

be on file for the Petitioner.


<u>BACKGROUND</u>

On July 2, 2009, Cephus was charged with four co-defendants in a superseding indictment (DE #35). Cephus was charged with: Count 1 - conspiracy under 18 U.S.C. § 371 to commit various violations of 18 U.S.C. §§ 2, 1591(a)(1), (b)(2), 2421, and 2423(a); in Counts 6, 8, 10, 12, 14, 16, and 18 - substantive violations of 18 U.S.C. § 1591(a)(1) and (b)(1) for his role in recruiting, enticing, harboring, transporting, providing, and obtaining victims A.H., A.W., B.G., C.V., J.O., L.G., and S.K., knowing that force, fraud, or coercion would be used to cause them to engage in commercial sex acts; in Counts 7, 9, 11, 13, 17, 20, and 21, with substantive violations of 18 U.S.C. §§ 2, 2421, for his role in transporting victims A.H., A.W., B.G., C.V., L.G., A.B.3, and L.E. in interstate commerce with intent that they engage in prostitution. (DE #35.)

Following a ten-day jury trial, Cephus was found guilty of all charges against him. (DE #203.) At trial, Cephus was represented by attorney Arlington J. Foley. On January 4, 2011, this Court held a sentencing hearing for Cephus, and he was sentenced to: 60 months for Count 1; 120 months for each of Counts 7, 9, 11, 13, 17, 20, and 21; and 324 months for each of Counts 6, 8, 10, 12, 14, 16, and 18, all terms to be served concurrently. Judgment was entered on January 7, 2011.

Through appointed appellate counsel, Craig M. Sandberg, Cephus filed a direct appeal with the Seventh Circuit on January 10, 2011. On appeal, Cephus raised the following arguments, *inter alia*: (1) insufficient evidence of his guilt was presented at trial; (2) the Court improperly excluded evidence of a victim's prior sexual behavior under Federal Rule of Evidence 412; and (3) his sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment because it was grossly disproportionate to his role in the offenses. *See United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 588, 133 S. Ct. 807. Regarding sufficiency of evidence, the Seventh Circuit stated:

> He argues that he had just helped out his brother from time to time, motivated by family loyalty. But an innocent or even noble motivation for committing a crime, as distinct from lack of intent to commit it, is not a defense.

*Cephus*, 684 F.3d at 706-07 (citations omitted). Regarding his role in the conspiracy, the Court found that:

> [a]lthough Stanton didn't commit all the substantive offenses charged in the indictment, he participated in the conspiracy by driving girls and women to their "calls" and collecting money from the johns for his brother. He did not beat any of the prostitutes but he watched them being beaten and so was aware of the scope of the conspiracy he had joined. The *Pinkerton* doctrine therefore made him liable for criminal acts committed by the other conspirators within that scope. *Pinkerton v. United States*, 328 U.S. 640; *United States v. Colon*, 549 F.3d 565, 572 (7th Cir. 2008).

*Id*. at 707. Regarding the exclusion of evidence pursuant to Rule

412, the Court found the excluded evidence "irrelevant" to the issues being decided. *Id.* at 708. Finally, the Court found that Cephus's argument that his sentence was grossly disproportionate to his role in the offenses was "frivolous." *Id.* at 709.

Cephus filed the instant motion to vacate his sentence under section 2255 on July 29, 2013 (DE #474). Cephus argues that his trial counsel improperly or insufficiently counseled him regarding his right to testy at trial, that he provided ineffective assistance, he failed to make objections to his sentencing guideline range, and he failed to inform the Court that Cephus wanted to plea guilty rather than go to trial. Cephus also requested to file a supplement to his 2255 motion, and this Court granted the request and deemed his supplement (DE #481) as filed. The Government filed a response, addressing the original 2255 and his supplement, on November 1, 2013 (DE #493). Cephus filed a reply on December 6, 2013 (DE #498). The Government then filed a traverse on January 21, 2014 (DE #515). Cephus asked to either strike, or respond to the traverse (DE #524), and this Court granted him the opportunity to respond (DE #528). Cephus filed an additional memorandum on March 14, 2014 (DE #535). He then filed a memorandum entitled "Notice of Authority," on April 8, 2014 (DE #542), and the Government filed a response on April 15, 2014 (DE #550). Cephus then moved to either strike the Government's response, or for leave to file a surreply, and the Court granted

him leave to file a surreply on or before July 14, 2014. (DE #565). To date, Cephus has not filed a surreply. As such, this motion is fully briefed, and ripe for adjudication.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Cephus's claims with these guidelines in mind.

Appointment of Counsel

The Seventh Circuit has left the appointment of counsel in section 2255 cases to the sound discretion of the lower courts, and there is no right to counsel in section 2255 cases "unless denial would result in fundamental fairness impinging on due process rights." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (quoting *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)).

Upon review of the documents filed since the inception of this case, there is no indication that Cephus's due process right will be impinged upon should he continue to represent himself. In the instant 2255 Petition and the other briefs before this Court, it is clear that Cephus is fully capable of articulating his arguments and presenting his case without an attorney. He cites to case law and sets forth cogent legal arguments. Therefore, this Court finds that denying Cephus's request for counsel will not impinge on his

due process rights, and the motion is **DENIED**.


Section 2255 Petition

Cephus contends that his trial attorney provided constitutionally ineffective assistance of counsel. Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (defendant "has a difficult burden of

proof as he must overcome the strong presumption that his attorney's performance was effective."). Defendant must establish specific acts or omissions that fell below professional norms. *Strickland*, 466 U.S. at 690. If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

The Seventh Circuit has held that, "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ." *Canaan v. McBride*, 395 F.3d 376, 385-86 (7th Cir. 2005). Additionally, trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689). "Courts are admonished not to become 'Monday morning quaterback[s]' in evaluating counsel's performance." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).


Not Testifying On His Own Behalf

Cephus claims his counsel was ineffective when he would "not allow the Petitioner to testify on his own behalf." (2255 Pet., DE #475, p. 2.) This assertion is belied by Cephus's own sworn testimony at the hearing which this Court conducted outside the

presence of the jury during trial. This Court asked Cephus if he had talked to his attorney regarding the right to testify, whether the attorney had explained he had a right to testify if he wished but no one could force him to testify, that if he did testify he would be subject to cross-examination, and this is a "one-time choice; in other words, you can't wait for the verdict to come back and say, Now I want to testify. You have to make your decision right now." (DE #493-1, pp. 2229-2230.) Cephus answered affirmatively to all those questions. *Id.* Then, this Court specifically asked Cephus, "[i]s it your desire not to testify in this case?" and he answered, "Yes, sir." (*Id.*, p. 2230.) When asked if he was doing this knowingly and voluntarily, he replied, "[y]es, Judge" and stated that no one forced him to not testify. (*Id.*, pp. 2230-31.)

Clearly, Cephus was properly advised of his right to testify and the Court found that Petitioner was making a knowing and voluntary decision not to testify. Petitioner's claim that his attorney improperly convinced him not to testify is thus contradicted by the record. He is bound by that testimony. *See United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987) ("Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. Such a requirement is consistent with reason and common sense."). Furthermore, Cephus has given no indication how his testimony could possibly have affected the outcome of the trial, and he

10

therefore cannot demonstrate prejudice. Cephus suggests that if he was allowed to testify, he would have shown that he was just a "small-time drug dealer" (DE #475, p. 4), but he also admits "that he was present once that he recalls concerning a fight between his brother and his girlfriend . . ." *Id.* This evidence would have corroborated other witnesses' testimony, and certainly does not indicate it could have lead to an acquittal.

Lack of a Competency Hearing

Cephus also claims that his trial counsel was ineffective for not requesting a competency hearing. (DE #475, pp. 6-7.) Cephus claims in his memorandum that he has a history of medical problems, including schizophrenia and depression, and he was never afforded a pre-trial mental examination. (*Id.*, p. 6.) An attorney has an obligation to seek a mental competency exam where there is reasonable cause to believe that the defendant was suffering from a mental disease or defect rendering him incompetent to the extent that he could not understand the nature and consequences of the proceedings against him or assist in his defense. *United States v. Grimes*, 173 F.3d 634, 635-36 (7th Cir. 1999).

The only evidence in the record that arguably could support Cephus's claim of possessing a mental illness did not surface until after Cephus was convicted. Cephus cites to information in his Presentence Report and states that his counsel was "well aware of these conditions as well as the U.S. Attorney" (DE #475, p. 6), but

Cephus himself was the source of this information during the sentencing phase after he was convicted at trial. The Probation office requested medical documents to verify Cephus's allegation that he was diagnosed with schizophrenia and depression, but Probation never received any records. (PSR, ¶¶ 209-10.) Moreover, Probation noted that Cephus believes he may also be bi-polar, but that illness has not been diagnosed. (*Id.* ¶ 209.) Cephus fails to provide any medical records to the Court to substantiate his claimed diagnoses of schizophrenia or depression. Even assuming, *arguendo*, as he suggested during the sentencing phase, he was prescribed medication at some point (PSR ¶ 210), and even if Cephus could show his trial counsel was aware of that fact prior to trial, his claim still would not succeed. *See, e.g., Balfour v. Haws*, 892 F.2d 556, 564 (7th Cir. 1989) ("If trial counsel knew [the defendant] was taking medication to stabilize his mood or thought, he would not necessarily have been remiss in proceeding to trial.") (citing *Illinois v. Marshall*, 448 N.E.2d 969, 977 (Ill. App. Ct. 1983) ("defendant's use of medication to maintain mental capabilities in itself [is] irrelevant to [the] determination of [his] competency to stand trial)). In sum, Cephus fails to overcome the strong presumption of effectiveness set forth in *Strickland*.

Alleged Misconduct With Jurors

Cephus claims his trial counsel was ineffective for not challenging alleged improper juror contact. (DE #475, p. 4.)

Cephus alleges the United States Attorney in this case, Jill Trumbull-Harris, "acknowledge[d] a juror as if they had prior knowledge of each other" and then hours after the trial concluded, Ms. Trumbull-Harris contacted the juror on Facebook. *Id.*[1] Cephus's account is incorrect.

On November 24, 2009, four days after the conclusion of trial, the Government filed a notice of contact from a juror which occurred after the jury verdict. (DE ##213, 219.) A second notice of contact was filed by the Government regarding another juror about contact after the verdict. (DE #218.) The Defendants jointly moved to have an evidentiary hearing on this matter (DE #219), this Court considered the request, and because it found no claim that misconduct occurred during the trial, entered an extensive order and declined to hold a hearing. (DE #228.)

The Court's ruling on this issue was not challenged by Cephus, or any of his co-defendants, on direct appeal. "An issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice." *Prewitt*, 83 F.3d at 816 (7th

---

[1] Cephus also claims the AUSA wrote a book entitled "how to win a trial and obtain a conviction by any cost." (DE #475, p. 5.) Even assuming, *arguendo*, she did (and there is no evidence of this whatsoever before the Court), Cephus totally fails to show how a book would entitle him to relief under section 2255.

Cir. 1996) (emphasis in original) (citations omitted). Cephus has
not satisfied those requirements here.

Pretrial

In his supplemental memorandum, Cephus also argues his counsel
was ineffective because he did not file a motion to sever the
defendants. (DE #481, p. 3.) The Seventh Circuit has stated there
is a "strong public interest" in having persons "jointly indicted
tried together." *United States v. Neely*, 980 F.2d 1074, 1090 (7th
Cir. 1992) (quoting *United States v. Percival*, 756 F.2d 600, 610
(7th Cir. 1985)). That is especially true in cases where multiple
defendants are charged with engaging in a common enterprise. *See*
*United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)
("[t]here is a strong interest in joint trials for those who engage
in a common enterprise."). Joint trials are economical for the
courts and prosecutors, reduce the stress on witnesses, and "give[]
the jury the best perspective on all of the evidence and therefore
increase[] the likelihood of a correct outcome." *Id.* Thus, Cephus
has not shown that if he made this motion, it likely would have
been granted and would have changed the outcome of the trial. *See,*
*e.g., United States v. Jackson*, 33 F.3d 866, 875-76 (denying claim
of ineffective assistance of counsel where counsel failed to make
a severance motion, reasoning it could have been a tactical
decision, and that in any event, "we think it highly unlikely that

14

a motion for severance would have been granted.").  Moreover, as in *Jackson*, the Court notes that this Court did admonish the jury that it was obligated to separately consider each defendant.  (DE #214, p. 20.)  Thus, the Court cannot say that failure to seek a severance resulted in a different result of the proceedings.

Similarly, Cephus's argument that his attorney should have taken action regarding pretrial publicity in the case also fails. (DE #475, p. 5.)  Cephus does not contend, and there is no evidence in the record, that any of the jurors were actually exposed to any pretrial publicity in this case or that any particular article biased or prejudiced any jurors.  *See United States v. Philpot*, 733 F.3d 734, 740-41 (7th Cir. 2013) (explaining how defendant must establish at least one of those factors to justify a venue transfer pursuant to Federal Rule of Criminal Procedure 21).  Thus, defense counsel was not ineffective for failing to move for a change of venue as that motion would not likely have been granted.

Sentencing Guidelines

To the extent Cephus specifically argues that his counsel was ineffective for not objecting to application of the enhancement in Guideline § 2A3.1(b)(1) at the sentencing phase (DE #498, p. 5, 8), the record reflects that his counsel did indeed object to that enhancement.  (PSR Addendum, Section VII.)  This Court ultimately overruled the objection, finding under Guideline § 1B1.3(a)(1)(B),

15

Cephus could be held responsible for the reasonably foreseeable acts of his co-conspirator. (DE #371, Transcript from Sentencing Hrg., pp. 39-50); *United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011) ("None of our cases requires that a defendant at the bottom of a conspiratorial hierarchy or pyramid engage in some affirmative conduct to help a co-conspirator commit each of his or her criminal acts before the defendant may be held accountable for such acts.")).

Cephus also seems to claim that trial counsel was ineffective for allowing a miscalculation of the sentencing guidelines and for failing to make other objections to the Court's calculation. (DE #475, pp. 7-8.) Generally, the Seventh Circuit has stated that, "a habeas corpus petition is rarely if ever the proper vehicle by which to challenge the application of a Sentencing Guideline provision where the sentence has become final and the petitioner did not directly appeal the issue." *Prewitt*, 83 F.3d at 816. In fact, "[a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* for the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice." *Id.* (emphasis in original) (citations omitted). Cephus had separate appellate counsel who did not raise this issue in the direct appeal, therefore, he cannot establish good cause for failure to

raise the claims. Moreover, he does not claim in the instant motion that his appellate counsel was ineffective for failing to raise the issue in the direct appeal. Therefore, these sentencing guideline claims are barred from review in this collateral proceeding.

Failure to Plead Guilty

Cephus claims his trial counsel was ineffective because "he wanted to plead guilty, but was told by his counsel that the Government would not let him." (DE #498, p. 2.) Cephus claims his attorney told him the only way he could plead guilty was to testify for the Government. *(Id.;* DE #481, p. 3.) Even assuming, *arguendo*, that this assertion is true, it does not prove ineffective assistance of counsel.

Cephus does not dispute that he was never offered a plea agreement by the Government in this case. (DE #493, p. 12, n. 1.) Because there is no evidence that the Government attempted to enter into plea negotiations with Cephus, his counsel cannot be deemed ineffective with regard to plea negotiations that never took place. *See e.g., Maddox v. United States*, No. 1:08-CR-90, 2013 WL 3878736, at *7 (N.D. W.Va. July 25, 2013)(concluding that because there was no plea agreement offered to counsel, counsel could not be deemed ineffective for failing to communicate a plea agreement to defendant).

The Government only learned of Cephus's desire to plead guilty during trial. (DE #515, p. 3.) The Government still declined to offer Cephus a plea agreement. At that point, Cephus could have opted to plead guilty in the blind, but the only prejudice a defendant can suffer from standing trial rather than pleading guilty in the blind is the possible loss of credit given at sentencing for acceptance of responsibility. To receive acceptance credit, a defendant must "truthfully admit[]the conduct comprising the offense[s] of conviction." U.S.S.G. § 3E1.1, Note 1(A).

In this case, Cephus has only denied his guilt, and continues to deny it. (*See* DE #372, Cephus Sentencing Hrg. Vol. II, pp. 24-37, where Cephus testified that the other witnesses lied on the stand, he didn't know what the girls were doing, that he wasn't responsible for bringing drugs into the house, and he didn't take them to appointments.) The Government argued at sentencing that "as soon as this defendant began speaking today, it was clear that he lacks - - he lacks any real remorse for his involvement in this case. He's in complete denial about the role that he played, which was a significant, important role to make this conspiracy run." (*Id.*, p. 48.) This Court agreed, finding Cephus lied during his sentencing hearing, there was overwhelming evidence of his involvement in the conspiracy, that he provided drugs, and Cephus showed "no remorse at all." (*Id.*, pp. 61-63.) After listening to Cephus at sentencing, the Court found "it more credible . . . that

when these girls were getting beaten, you probably were in that kitchen with these other individuals, as was testified under oath during trial, laughing." (*Id.*, p. 64.) As such, Cephus's current claim that he wished to plead guilty is contradicted by evidence in the record, specifically, his own words to the Court at sentencing.

Even assuming, *arguendo*, that Cephus had given his counsel notice earlier that he wished to plead guilty, his counsel was not ineffective for advising Cephus that he could be called to testify by the Government. Indeed, the Government avers that "[i]f Defendant had given timely notice of his desire to plead guilty and while under oath he had provided a sufficient factual basis to support his guilty plea to each of the federal criminal charges he was facing, the government likely would have subpoenaed him to testify as a witness at trial." (DE #515, p. 2.) Thus, Cephus's attorney was correct to warn Cephus that by pleading guilty he would open himself up to being subpoenaed by the Government to testify against his co-defendants. Cephus concedes he "told his counsel that he could not testify because he feared for his life 'once he was sent to prison.'"[2] (DE #481, p. 3.) Thus, because Cephus told his counsel he would not testify against his co-

---

[2]Had Cephus pled guilty, but refused to testify against his co-conspirators, or had he testified falsely at trial, the Government would have objected to him receiving credit for acceptance of responsibility under Guideline § 3E1.1, and likely would have sought an obstruction of justice enhancement at sentencing as well under Guideline § 3C1.1.

conspirators, he cannot establish the result of the proceeding would have been different were it not for defense counsel advising him to go to trial.

In his "Notice of Authority" (DE #542), Cephus cites to a recent Fifth Circuit decision, arguing this Court must hold an evidentiary hearing to explore the allegations of ineffective assistance of counsel. *See United States v. Reed*, 719 F.3d 369 (5th Cir. 2013). In *Reed*, the petitioner alleged his counsel had wrongly informed him he would receive a sentence of thirty-six months if he were to plead guilty. *Id.* at 371. Based on this advice, the petitioner went to trial, he was convicted by a jury, and sentenced to forty-eight months in prison. *Id.* at 372. The petitioner argued he would have pled guilty had his counsel properly advised him of his possible sentence. *Id.* at 374-75. The *Reed* Court granted an evidentiary hearing because the petitioner's affidavit made a specific factual claim and "was sufficient to prove his allegation and was not speculative, conclusory, plainly false, or contradicted by the record. . . ." *Id.* at 374. In making this finding, *Reed* cautioned that a defendant must present "independent indicia of the likely merit of his allegations" to be entitled to an evidentiary hearing on a section 2255 motion. *Id.* at 373 (citing *Untied States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). This case differs from *Reed* because Cephus has not shown any independent indicia of the likely merit of his allegations. To

the contrary, the record shows Cephus refused to accept responsibility for his actions, and there is no indicia of reliability that he indeed would have pled guilty in the blind were it not for the alleged ineffective assistance of his counsel. Cephus has presented only conclusory and speculative allegations without evidentiary support - a situation which *Reed* makes clear is not entitled to an evidentiary hearing. *Id.* at 373-74.


## *Alleyne*-Related Claims

In his "Request to File a Supplement to 2255 Motions," (DE #481), Cephus brings to this Court's attention the Supreme Court's ruling in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). His exact argument is difficult to understand, but Cephus seems to believe *Alleyne* conflicts with the *Pinkerton* doctrine. *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946). In his direct appeal, the Seventh Circuit found:

> Although Stanton didn't commit all the substantive offenses charged in the indictment, he participated in the conspiracy by driving girls and women to their "calls" and collecting money from the johns for his brother. He did not beat any of the prostitutes but he watched them being beaten and so was aware of the scope of the conspiracy he had joined. The *Pinkerton* doctrine therefore made him liable for criminal acts committed by the other conspirators within that scope.

*Cephus*, 684 F.3d at 707 (citations omitted). Cephus also argues that it was improper not to include in the jury instructions that he was "motivated by family loyalty." (DE #481, p. 1.) The

Seventh Circuit dismissed this argument as well, finding "an innocent or even noble motivation for committing a crime, as distinct from lack of intent to commit it, is not a defense." *Id.* at 706-07.

Cephus's *Alleyne* claims fail. First, *Alleyne* has not been made retroactively applicable to cases on collateral review. *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). Second, even assuming, *arguendo*, that Cephus could raise *Alleyne* in this proceeding, it only holds that facts that increase the minimum statutory punishment must be admitted or proven beyond a reasonable doubt. *Alleyne*, 133 S. Ct. at 2155. Cephus has not indicated what fact at issue in this case increased the mandatory minimum punishment he faced, but allegedly was not proven beyond a reasonable doubt at trial. Moreover, *Alleyne* does not affect factual findings to calculate a defendant's advisory Guidelines range. *See United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013); *United States v. Claybrooks*, 729 F.3d 699, 708 (7th Cir. 2013). Thus, Cephus is not entitled to relief under *Alleyne*.


Request For An Evidentiary Hearing

Cephus requests that the Court hold an "[e]videntiary hearing concerning the issues that the U.S. Attorney contacted juror's [sic.] within hours after the jury reached verdict, competency hearing, miscalculation of guidelines." (2255 Pet., DE #474, pp.

11-12.) An evidentiary hearing need not be held for every section 2255 motion. *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990). "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).

Cephus has failed to offer the Court any objective facts outside the trial record that would warrant an evidentiary hearing. Moreover, the Court has concluded that the record and history of this case demonstrate that Cephus is not entitled to relief. Therefore, an evidentiary hearing is not warranted. *See Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (holding district court did not abuse its discretion in denying evidentiary hearing where defendant was not entitled to 2255 relief, and given lack of additional evidence from defendant).

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Cephus has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.


CONCLUSION

For the aforementioned reasons, the motion to appoint counsel (DE #483) is **DENIED** and the section 2255 motion (DE #474) is also **DENIED**. Cephus's request for an evidentiary hearing is also **DENIED**. The Clerk is **ORDERED** to **DISMISS** this civil action **WITH PREJUDICE**. Additionally, the Court **DECLINES** to issue a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Inmate Reg. No. 10107-27), Otisville FCI, Inmate Mail/Parcels, P.O. Box 1000, Otisville, NY

10963, or to such other more current address that may be on file for the Petitioner.


DATED: August 18, 2014    /s/ RUDY LOZANO, Judge
             United States District Court